

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FILED

MAR — 7 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**DREW TYLER LAIL,**

    **Plaintiff,**

    **v.**

**OFFICER N.M. CAESAR and
OFFICER Q. TOMLINSON,**

    **Defendants.**

**CIVIL ACTION NO. 2:21-cv-148**

### *MEMORANDUM OPINION AND ORDER*

Before the Court are Defendant Officer Q. Tomlinson's ("Tomlinson") and Defendant Officer N.M. Caesar's ("Caesar") (collectively "Defendants") Motions to Dismiss. Def. Tomlinson's Mot. Dismiss, ECF No. 31; ("Tomlinson Mot. Dismiss"); Def. Caesar's Mot. Dismiss, ECF No. 34 ("Caesar Mot. Dismiss"). Tomlinson moves to dismiss Count I in part, Count III, and Count IV of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Tomlinson Mot. Dismiss; Def. Tomlinson's Mem. Supp. Mot. Dismiss 2, ECF No. 32 ("Tomlinson Mem. Supp."). Caesar moves to dismiss Count I, Count III, and Count IV of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Caesar Mot. Dismiss; Def. Caesar's Mem. Supp. Mot. Dismiss, ECF No. 35 ("Caesar Mem. Supp.").

The Court has considered the memoranda of the parties and this matter is now ripe for determination. *See* Tomlinson Mem. Supp.; Pl.'s Mem. Opp. to Def. Tomlinson's Mot. Dismiss, ECF No. 40 ("Pl.'s Mem. Opp. Tomlinson"); Def. Tomlinson's Reply to Pl.'s Mem. Opp. to Def. Tomlinson's Mot. Dismiss, ECF No. 42 ("Tomlinson Reply"); Caesar Mem. Supp.; Pl.'s Mem. Opp. to Def. Caesar's Mot. Dismiss, ECF No. 39 ("Pl.'s Mem. Opp. Caesar"); Def. Caesar's Reply to Pl.'s Mem. Opp. to Def. Caesar's Mot. Dismiss, ECF No. 41 ("Caesar Reply"). Upon review,

the Court finds that a hearing on these Motions is not necessary. *See* E.D. VA. LOCAL CIV. R. 7(J). For the reasons stated herein, Defendant Tomlinson's Motion to Dismiss is **DENIED IN PART AND GRANTED IN PART**, and Defendant Caesar's Motion to Dismiss is **DENIED IN PART AND GRANTED IN PART**.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff Drew Tyler Lail ("Plaintiff" or "Lail") filed a Complaint in Norfolk Circuit Court against Defendants and others on February 22, 2021. *See* Notice of Removal Ex. 1, ECF No. 1. On March 19, 2021, previous defendants removed this action to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1441 and 1446. *Id.* at 1. On April 8, 2021, Plaintiff filed a Notice of Voluntary Dismissal of the previous defendants, only, without prejudice. Notice Vol. Dismiss., ECF No. 5. On June 10, 2021, Plaintiff filed a Motion for Leave to File an Amended Complaint. Pl.'s Mot. Leave File Am. Compl., ECF No. 27. On June 15, 2021, Magistrate Judge Douglas E. Miller granted Plaintiff's Motion. Agreed Order Grant'g Pl.'s Mot. Leave File Am. Compl., ECF No. 29. Accordingly, also on June 15, 2021, Plaintiff filed an Amended Complaint. Am. Compl., ECF No. 30. Relevant to Defendants' Motions to Dismiss and stated in the light most favorable to Plaintiff, the following facts are drawn from the Amended Complaint and attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Plaintiff is a natural citizen and resident of Chesapeake, Virginia. Am. Compl. at ¶ 4. Defendant Caesar was, at all times relevant to the Amended Complaint, a police officer acting within that capacity as an agent, servant, and/or employee of the City of Norfolk and/or the Norfolk Police Department. *Id.* at ¶ 5. Defendant Tomlinson was, at all times relevant to the Amended Complaint, a police officer acting within that capacity as an agent, servant, and/or employee of the City of Norfolk and/or the Norfolk Police Department. *Id.* at ¶ 6.

On or about the evening of October 9, 2019, Plaintiff visited the Colley Cantina Restaurant and Bar in Norfolk Virginia. *Id.* at ¶ 8. Plaintiff alleges Colley Cantina staff "physically accosted and threatened" him, after which Plaintiff called the Norfolk Police non-emergency number and waited outside the restaurant for police to arrive. *Id.* at ¶¶ 8-9. Soon thereafter, Defendants arrived in Norfolk Police vehicles, armed, and wearing Norfolk Police uniforms and badges. *Id.* at ¶ 9. Defendants questioned and conversed with Plaintiff on the sidewalk outside Colley Cantina. *Id.* at ¶ 10. Plaintiff described his interactions with Colley Cantina staff, why he called the police, his understanding of his rights in public places, his views on law enforcement, his understanding of his rights when interacting with police officers, and his understanding of "his rights to be treated equally and fairly and with due process of law." *Id.* Plaintiff states he answered Defendants' questions and provided identification upon request. *Id.* Plaintiff alleges Caesar then told him to "just stop talking because quite frankly I'm getting annoyed." *Id.*

Plaintiff states that he "respectfully cooperated" with Defendants at all times. *Id.* at ¶ 11. Plaintiff alleges Defendants "explicitly acknowledged that Plaintiff had done nothing wrong, and that they had no probable cause to arrest him." *Id.* Defendants then told Plaintiff to go home and to not "come back here." *Id.* In response, Plaintiff continued to speak with Defendants and Defendants again told him to go home. *Id.* Plaintiff then stated, "I have the right to stand here," after which Plaintiff alleges Tomlinson approached him from behind, grabbed him, and placed him in a carotid chokehold. *Id.* at ¶¶ 11-12. Plaintiff stated "[s]top, stop" and refrained from physically resisting. *Id.* at ¶ 13. While Tomlinson applied the chokehold, Caesar grabbed Plaintiff's arms and handcuffed his wrists behind his back. *Id.* at ¶ 15. After Plaintiff said "stop," he alleges Tomlinson continued the chokehold and applied pressure to Plaintiff's carotid artery, which caused him to lose consciousness. *Id.* at ¶ 14. After losing consciousness, Plaintiff alleges Defendants caused his

body to "fall forward," which "caused [his] head to strike the Colley Cantina exterior windowsill and/or building wall." *Id.* at ¶ 16. Plaintiff further alleges Defendants "then struck Plaintiff's head approximately 8-10 times while he was unconscious, perhaps in an attempt to revive [him]." *Id.* Defendants then took Plaintiff to the hospital where he was treated for his injuries. *Id.* at ¶ 17.

Thereafter, Defendant was taken into custody and prosecuted for public intoxication. *Id.* Plaintiff states he "was not intoxicated[,] did not fail any sobriety tests[,] was never administered a breathalyzer test[,] was not accused of being drunk at the scene . . . and did not exhibit any signs of drunkenness." *Id.* at ¶ 18. Plaintiff alleges Defendants "fabricated Plaintiff's intoxication charge . . . to cover up" their conduct. *Id.* Plaintiff states his public intoxication charge was dismissed on February 10, 2020, following a deferred adjudication requiring Plaintiff to perform community service. *Id.* He further states that, due to Defendants' conduct, he suffered a traumatic brain injury, a concussion, ongoing concussion symptoms, a laceration above his eye, ongoing dizziness, blurry vision, light sensitivity, headaches, significant memory loss, ongoing memory impairment, and other physical impairments. *Id.* at ¶ 24. He alleges his physical injuries negatively impacted his education and career. *Id.* at ¶ 26. Finally, he alleges that, due to Defendants' conduct, he has suffered from severe anxiety and panic attacks. *Id.* at ¶ 27. Accordingly, Plaintiff asserts four counts against Defendants:

Count 1.   Deprivation of Civil Rights Under Color of State Law in Violation of 42 U.S.C. § 1983 (Am. Compl. at ¶¶ 30-59);

Count 2.   Battery (Am. Compl. at ¶¶ 60-65);

Count 3.   Gross Negligence (Am. Compl. at ¶¶ 66-72); and

Count 4.   False Arrest (Am. Compl. at ¶¶ 73-81).

Plaintiff sues Defendants in their individual capacities for all counts. *See* Am. Compl. at 1. Tomlinson moves to dismiss Count I in part, Count III, and Count IV. *See* Tomlinson Mem. Supp.

at 2. Caesar moves to dismiss Count I, Count III, and Count IV. *See* Caesar Mot. Dismiss at 1.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted.  For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions ... without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

### III.   DISCUSSION

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), Defendant Tomlinson moves to dismiss Count I's Fourth Amendment claim, Count III, and Count IV of the Amended Complaint. *See* Tomlinson Mot. Dismiss; Tomlinson Mem. Supp. at 2. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Caesar moves to dismiss Count I, Count III, and Count IV of the Amended Complaint. *See* Caesar Mot. Dismiss; Caesar Mem. Supp. In determining whether each count is plausibly pled, the Court will assess whether the Amended Complaint states sufficient facts in support of the underlying elements for each offense.

### A.  Count One – Violation of 42 U.S.C. § 1983

Pursuant to 42 U.S.C. § 1983[1], a plaintiff must establish that the (1) defendants violated a right secured by the Constitution or laws of the United States and (2) acted under color of state law in so doing. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50–52 (1999); *see also, New Burnham Prairie Homes v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overturned on other grounds); *see also Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir. 1993) (quotation omitted) (to establish a § 1983 civil rights claim, a plaintiff "must demonstrate that the conduct complained of was committed by a person acting under state law and 'that the conduct deprived him of rights, privileges or

---

[1] 42 U.S.C.A. § 1983 provides in full:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

immunities secured by the Constitution'"). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. A plaintiff must also establish that the defendant caused the plaintiff injury by violating plaintiff's constitutional rights. *See Coppage v. Mann*, 906 F. Supp. 1025, 1035 (E.D. Va. 1995); *see also* 42 U.S.C. § 1983 ("Every person who, under color of [state law] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any [constitutional] rights . . . shall be liable to the party *injured*."). Here, Plaintiff alleges various § 1983 violations under the First and Fourth Amendments to the United States Constitution.[2] Am. Compl. at ¶¶ 30-59.

### 1. Virginia Deferred Disposition Under *Heck*

As a threshold matter, Defendants argue that Plaintiff's deferred disposition precludes his § 1983 claim under the First Amendment. *See* Caesar Mem. Supp. at 3 ("Plaintiff's First Amendment retaliation claims fails because there was a judicial determination of probable cause for the arrest."); Tomlinson Mem. Supp. at 5 ("Given that [P]laintiff agreed to perform community service, he cannot now effectively challenge the basis for the probable cause supporting the charges."). Defendants therefore argue that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Plaintiff's § 1983 claim under the First Amendment.

In *Heck*, the Supreme Court held that a § 1983 claim for damages is barred if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

---

[2] The Court notes that Plaintiff's exact allegations in Count I are unclear from the Amended Complaint. The exact wording of the Count I heading reads as follows: "Deprivation of Civil Rights Under Color of State Law – 42 U.S.C. § 1983; Violation of First and Fourth Amendment Rights to Free Speech and to be Free from Unreasonable Seizure (Freedom from Unreasonable Body Restraint, Physical Abuse, Excessive Force; Unlawful Retaliation Against Free Speech; and False Arrest)." Am. Compl. at 11. Defendants understand Count I to encompass a First Amendment claim for unlawful retaliation against free speech and a Fourth Amendment claim for excessive force.

determination, or called into question by a federal court's issuance of a writ of habeas corpus."
512 U.S. at 486-87. A plaintiff necessarily implies the invalidity of his or her conviction or
sentence if he or she "would have to negate an element of the offense of which he [or she] has
been convicted" in order to prevail. *Id.* at 486 n. 6. Indeed, "[t]he logical *necessity* that the
judgment in the § 1983 case imply the invalidity of a criminal conviction is at the heart of the *Heck*
requirement for dismissal of the § 1983 action." *Ballenger v. Owens*, 352 F.3d 842, 846 (4th Cir.
2003) (emphasis in original). If, however, the plaintiff's action "will *not* demonstrate the invalidity
of any outstanding criminal judgment . . . the action should be allowed to proceed." *Heck*, 512
U.S. at 487, n. 7 (for example, a § 1983 damages suit for an allegedly unreasonable search may lie
even if the challenged search produced conviction-resulting evidence because doctrines like
independent source and inevitable discovery could yield a situation where the search is unlawful,
but the conviction is valid) (emphasis in original).

 The Court of Appeals for the Fourth Circuit and this District have not yet addressed
whether a Virginia deferred disposition qualifies as a conviction for purposes of *Heck*. Caesar and
Plaintiff[3] discuss three cases in their memoranda: *DeLeon v. City of Corpus Christi*, 488 F.3d 649
(5th Cir. 2007), *Stutzman v. Krenik*, 350 F. Supp. 3d 366 (D. Md. 2018), and *Tomashek v. Raleigh
Cty. Emergency Operating Ctr.*, 344 F. Supp. 3d 869 (S.D.W. Va. 2018).

 In *DeLeon*, the Fifth Circuit Court of Appeals held that a deferred adjudication order in
Texas is a "sentence of conviction" for purposes of *Heck*. 488 F.3d at 652. The Fifth Circuit
explicitly stated, however, that "[t]his case does not require that we decide whether a successfully
completed deferred adjudication, with its more limited collateral consequences under Texas law,
is also a conviction for the purposes of *Heck*, and we do not decide that question." *Id.* at 656. In

---

[3] Tomlinson raises this issue, but he cites no case law in support. *See* Tomlinson Mem. Supp. at 5-6.

other words, the Fifth Circuit limited its holding to a Texas deferred adjudication *order* rather than a completed deferred adjudication, which is at issue here. Accordingly, the Court finds *DeLeon* to be unpersuasive authority for the instant action.

In *Stutzman*, the United States District Court for the District of Maryland held that a Maryland probation before judgment ("PBJ") disposition is the equivalent of a conviction for purposes of *Heck*. 350 F. Supp. 3d at 379. While it "does not result in a formal conviction or judgment," the *Stutzman* court reasoned – in reliance on the *DeLeon* decision – that, like a Texas deferred adjudication, a Maryland PBJ disposition is "a final judicial act with an order imposing conditions of probation." *Id.* "More importantly, a PBJ, by statute, necessarily comes after a finding of guilt." (citing Md. Code Ann., Crim. Proc. § 6-220(b)(1) (West 2011)). Indeed, the *Stutzman* court ultimately concluded that a Maryland PBJ disposition qualifies as a *Heck* conviction "[b]ecause such a finding of guilt would necessarily be undermined by a successful challenge to the underlying arrest." *Id.* In applying the facts of that case, the court also concluded that "a finding by this Court that Defendants lacked probable cause to arrest Stutzman would necessarily invalidate the original guilty finding upon which the PBJ was premised, because if the arrest were invalid, there would be no other lawful basis for Defendants to have detained and charged him with the offense." *Id.* at 380 (citing *Heck*, 512 U.S. at 487 n. 7).

In *Tomashek*, the United States District Court for the Southern District of West Virginia held that *Heck* does not bar § 1983 claims following a plaintiff's successful completion of a pretrial diversion program. 344 F. Supp. 3d at 871. Under West Virginia's pretrial diversion agreement statute, successful completion of a pretrial diversion agreement with a prosecutor precludes prosecution for the relevant offense. *Id.* at 874. Moreover, the court found that "a pretrial diversion agreement under West Virginia law is a means of *avoiding* a judgment of criminal guilt – the

opposite of a conviction in a criminal action." *Id.* at 874-75 (emphasis in original). The court concluded that "a judgment in favor of the plaintiff on his § 1983 claims would not imply the invalidity of his conviction or sentence because the plaintiff was not convicted of *any* offense." *Id.* at 874 (emphasis in original). Thus, like the *Stutzman* court, the *Tomashek* court found the issue of a judgment of criminal guilt to be especially important. *Compare id.* at 874-75 (concluding that the avoidance of a judgment of criminal guilt is the opposite of a criminal conviction), *with Stutzman*, 350 F. Supp. 3d at 379 (concluding a Maryland PBJ disposition qualifies as a *Heck* conviction "[b]ecause such a finding of guilt would necessarily be undermined").

After the arrest alleged in the Amended Complaint, Plaintiff was charged in the Norfolk General District Court with public intoxication, a Class 4 misdemeanor, in violation of § 29-17(a) of the Norfolk Code of Ordinances. *See* Tomlinson Mem. Supp. at Ex. A, at 1; Caesar Mem. Supp. at Ex. 1, at 1.[4] The parties agree that Plaintiff entered into a deferred disposition on this charge and that, on February 10, 2020, the charge was dismissed upon Plaintiff's performance of community service. *See* Am. Compl. at ¶ 18; Tomlinson Mem. Supp. at 5-6; Caesar Mem. Supp. at 5. Defendants assert that, according to the court records, if Plaintiff performed four hours of community service, the charge would be dismissed and, if not, he would be found guilty and ordered to pay a $50.00 fine.[5] *See* Tomlinson Mem. Supp. at 2; Caesar Mem. Supp. at 5.

Virginia Criminal Code § 19.2-298.02[6] governs deferred dispositions in criminal cases, but

---

[4] "[A] federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

[5] The Court notes that the court records attached as exhibits to Defendants' supporting memoranda contains the following notes: "4hrs C.S. if done, dismiss if not, G $50. 2-10-20 (C/G) [illegible] △ excused." *See* Tomlinson Mem. Supp. at Ex. A, at 1; Caesar Mem. Supp. at Ex. 1, at 1.

[6] Virginia Code § 19.2-298.02 provides in full:

    A. A trial court presiding in a criminal case may, with the agreement of the defendant and the Commonwealth, after any plea or trial, with or without a determination, finding, or pronouncement of guilt, and notwithstanding the entry of a conviction order, upon consideration of the facts and circumstances of the case, including (i) mitigating factors relating to the defendant or the offense, (ii)

it was not enacted until October 21, 2020.[7] *See* Va. Code Ann. § 19.2-298.02. While § 19.2-298.02 was codified subsequent to the dismissal of Plaintiff's charge, the Court nonetheless finds it useful in understanding how the General District Court may have handled Plaintiff's proceedings. Virginia law also provides several other statutory bases for courts to authorize deferred dispositions. Indeed, the court records attached to Defendants' memoranda outline that the General District Court may order a charge dismissed pursuant to several statutes, including Virginia Code §§ 4.1-305, 18.2-57.3, 18.2-251, 19.2-151, and 19.2-303.2. *See* Tomlinson Mem. Supp. at Ex. A, at 2; Caesar Mem. Supp. at Ex. 1, at 2. The records indicate that the court dismissed the charge on February 10, 2020, but do not indicate which statute, if any, grounded the dismissal. Moreover, the Virginia statute governing the effect of dismissal of criminal charges at the time of Plaintiff's charge dismissal only provided: "No dismissal of any criminal charge by a court shall bar subsequent prosecution of the charge unless jeopardy attached at the earlier proceeding or unless

_____

the request of the victim, or (iii) any other appropriate factors, defer proceedings, defer entry of a conviction order, if none, or defer entry of a final order, and continue the case for final disposition, on such reasonable terms and conditions as may be agreed upon by the parties and placed on the record, or if there is no agreement, as may be imposed by the court. Final disposition may include (a) conviction of the original charge, (b) conviction of an alternative charge, or (c) dismissal of the proceedings.

B. Upon violation of a term or condition, the court may enter an adjudication of guilt, if not already entered, and make any final disposition of the case provided by subsection A. Upon fulfillment of the terms and conditions, the court shall adjudicate the matter consistent with the agreement of the parties or, if none, by conviction of an alternative charge or dismissal of the case.

C. By consenting to and receiving a deferral of proceedings or a deferral of entry of a final order of guilt and fulfilling the conditions as specified by the court as provided by subsection A, the defendant waives his right to appeal such entry of a final order of guilt.

Prior to granting a deferral of proceedings, a deferral of entry of a conviction order, if none, or a deferral of a final order, the court shall notify the defendant that he would be waiving his rights to appeal any final order of guilt if such deferral is granted.

D. Upon agreement of all parties, a charge that is dismissed pursuant to this section may be considered as otherwise dismissed for purposes of expungement of police and court records in accordance with § 19.2-392.2, and such agreement of all parties and expungement eligibility shall be indicated in the final disposition order.

[7] § 19.2-298.02 was subsequently amended on March 1, 2021.

11

the dismissal order explicitly states that the dismissal is with prejudice." Va. Code. § 19.2-265.6 (2007). The statute is silent on whether that charge may be considered a conviction for any other purpose and the court records provided in this case do not specify that the charge was dismissed with prejudice.

Thus, while the Court acknowledges that Plaintiff challenges the presence of probable cause, his state of intoxication, the arrest, and the validity of the *charge* itself, *Heck* does not preclude such claims under § 1983 unless a successfully completed deferred disposition is, in fact, a *conviction*. According to the records provided, Defendants have failed to establish that the General District court made a finding of guilt, conducted a trial[8], or grounded the dismissal of Plaintiff's charge in a specific Virginia statute. The Court therefore finds that *Heck* does not bar Plaintiff's § 1983 claim under the First Amendment.

## 2. First Amendment Unlawful Retaliation Claim

As a general matter, the law is settled that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" on the basis of the individual's constitutionally protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman*, 547 U.S. at 256). To prevail, a plaintiff must establish a "causal

---

[8] Caesar claims the General District Court conducted a trial and made a finding of guilt. *See* Caesar Mem. Supp. at 5 ("According to the Norfolk General District Court documents, trial on January 13, 2020, resulted in imposition of four hours of community service, which, if performed, would result in dismissal of the charge, and if not performed, would result in a guilty finding and imposition of a $50.00 fine."); *see also* Caesar Reply at 5 ("Lail had a trial in which the court found sufficient evidence of guilt."). However, the attached exhibit only indicates that the court held a hearing on January 13, 2020. *See* Caesar Mem. Supp. at Ex. 1, at 1. Plaintiff also does not address whether a trial occurred in his memoranda. Accordingly, the Court cannot assume at this point that the hearing on January 13, 2020 was a trial during which the court found evidence of guilt.

connection" between the government defendant's "retaliatory animus" and the plaintiff's

"subsequent injury." *Id.* In other words, evidence of retaliatory animus and injury, alone, is

insufficient; "the motive must *cause* the injury." *Id.* (emphasis in original). A plaintiff must

demonstrate the "causal connection" under a "but-for" standard, "meaning that the adverse

action against the plaintiff would not have been taken absent a retaliatory motive." *Id.*; *see also*

*Hartman*, 547 U.S. at 260 ("It may be dishonorable to act with an unconstitutional motive and

perhaps in some instances be unlawful, but action colored by some degree of bad motive does

not amount to a constitutional tort if that action would have been taken anyway.").

Establishing a "causal connection" is straightforward for some retaliation claims but

complicated for others. *Id.* at 1722-23 (comparing retaliation claims in the public employment

and retaliatory prosecution contexts). Retaliatory arrest claims "present a tenuous causal

connection between the defendant's alleged animus and the plaintiff's injury." *Reichle v.*

*Howards*, 566 U.S. 658, 668 (2012). The complexity of the causal inquiry derives from the fact

that "protected speech is often a 'wholly legitimate consideration' for officers when deciding

whether to make an arrest." *Nieves*, 139 S. Ct. at 1723-24 (quoting *Reichle*, 566 U.S. at 668). "In

deciding whether to arrest, police officers often make split-second judgments" and "[t]he content

of the suspect's speech might be a consideration in circumstances where the officer must decide

whether the suspect is ready to cooperate, or, on the other hand, whether he may present a

continuing threat to interests that the law must protect." *Lozman v. City of Riviera Beach, Fla.*,

138 S. Ct. 1945, 1953 (2018).

Further, "evidence of the presence or absence of probable cause for the arrest will be

available in virtually every retaliatory arrest case." *Reichle*, 566 U.S. at 668. Indeed, "it is

particularly difficult to determine whether the adverse government action was caused by the

officer's malice or the plaintiff's potentially criminal conduct." *Nieves*, 139 S. Ct. at 1724. Thus, a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for arrest." *Id.* (holding officers had probable cause to arrest someone they knew had been drinking, and who stood close and spoke loudly to officers in order to challenge them). "If there was probable cause, the case ends." *Lozman*, 138 S. Ct. at 1952. "To prove an absence of probable cause, [the plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff violated the relevant statute. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002). "[I]f the plaintiff establishes the absence of probable cause, then the *Mt. Healthy* test governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." *Nieves*, 139 S. Ct. at 1725 (quoting *Lozman*, 138 S. Ct. at 1952-53) (internal quotation omitted)

In support of his First Amendment retaliation claim, Plaintiff alleges that Defendants "had neither valid evidence . . . nor legal cause or excuse to seize and detain him." Am. Compl. at ¶ 32. Further, Plaintiff alleges he "engaged in protected speech that was the but-for cause of Defendants' retaliatory actions." *Id.* As a preliminary matter, there is no dispute that Plaintiff's speech was constitutionally protected. *See Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 377 (1997) ("[S]peech in public areas is at its most protected on public sidewalks."). Defendants also do not dispute that they acted under color of state law. *See Sullivan*, 526 U.S. at 50–52. The parties do dispute, however, the presence of probable cause.

Plaintiff has pled that Defendants lacked probable cause to arrest him.[9] *See* Am. Compl.

---

[9] The Supreme Court in *Nieves* specifically required that a "plaintiff pressing a retaliatory arrest claim must *plead and prove* the absence of probable cause." *Nieves*, 139 S. Ct. at 1724 (emphasis added). At the motion to dismiss stage, the Court must take Plaintiff's factual allegations to be true. *See Erickson*, 551 U.S. at 94; *Eastern Shore Markets*, 213 F.3d at 180. Therefore, the Court will assess whether Plaintiff pled and proved the absence of

at ¶¶ 32, 54. At this stage in litigation, taking Plaintiff's allegations as true, the Court finds that

Plaintiff has proved the absence of probable cause because he alleges he was not intoxicated, did

not exhibit any signs of drunkenness, and that Defendants "explicitly acknowledged that Plaintiff

had done nothing wrong, and that they had no probable cause to arrest him." *Id.* at ¶ 11, 18.

Defendants told Plaintiff to order a ride home. *Id.* at ¶ 12. Plaintiff responded by saying "I have

the right to stand here," and, "immediately after," Tomlinson approached Plaintiff from behind,

grabbed him, and placed him in a carotid chokehold. *Id.* Thereafter, Caesar grabbed Plaintiff's

arms and handcuffed his wrists behind his back. *Id.* at ¶ 15.

The Court finds that this set of facts made it unjustifiable for a reasonable officer to

conclude that Plaintiff was publicly intoxicated. *Brown*, 278 F.3d at 368. Defendants both argue

that probable cause is established because Plaintiff was charged with public intoxication. *See*

Tomlinson Mem. Supp. at 5; Caesar Mem. Supp. at 5. However, notwithstanding any potential

bars under *Heck*, the standard of proving probable cause depends upon the totality of the

circumstances at the time of the arrest, not after the fact. *Maryland v. Pringle*, 540 U.S. 366, 371

(2003) ("To determine whether an officer had probable cause to arrest an individual, we

examine the events leading up to the arrest, and then decide 'whether these historical facts,

viewed from the standpoint of an objectively reasonable police officer, amount to' probable

cause.") (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). The Court finds that the

alleged events leading up to the arrest, viewed from the standpoint of an objectively reasonable

police officer, do not amount to probable cause. The Court also finds that these facts establish

that "the retaliation was a substantial or motivating factor" behind the arrest because, according

to Plaintiff's factual allegations, there was no other reason justifying his arrest. *Nieves*, 139 S. Ct.

---

probable cause assuming the facts in the Amended Complaint are true.

at 1725. Additionally, Defendants fail to show that the arrest "would have been initiated without respect to retaliation." *Id.*

Accordingly, Defendants' Motions to Dismiss Plaintiff's First Amendment Unlawful Retaliation Claim in Count I of the Amended Complaint are **DENIED**.

### 3. Fourth Amendment Excessive Force Claim

Plaintiff alleges Defendants violated his Fourth Amendment rights in using "deadly and excessive force when applying a choke hold . . . and intentionally causing his unconscious body to fall and his head to strike a concrete windowsill." Am. Compl. at ¶ 31. Tomlinson moves to dismiss this claim in so far as it relies on the Fourteenth Amendment because he argues that Plaintiff did not suffer any harm during pretrial detention.[10] Tomlinson Mem. Supp. at 6. However, Plaintiff's claim in Count I relies explicitly on the Fourth Amendment, "as applied to the states through the Fourteenth Amendment." Am. Compl. at ¶ 40. Therefore, the Court finds Plaintiff's excessive force claim is based on the Fourth Amendment and Tomlinson's argument is inapplicable. Accordingly, Defendant Tomlinson's Motion to Dismiss Count I on the basis that it relies on the Fourteenth Amendment is **DENIED IN PART**.

Both Defendants argue, however, that Plaintiff's claim should be dismissed in so far as it alleges a race-based discriminatory animus claim under the Fourteenth Amendment. *See* Tomlinson Mem. Supp. at 6; Caesar Mem. Supp. at n. 1. Under Count I, Plaintiff alleges: "Upon information and belief, Defendants violated Plaintiff's constitutional rights, in whole or in part, because of race-based discriminatory animus of the officers toward Caucasians." Am. Compl. at ¶

---

[10] *See Wiggins v. Quesenberry*, 222 F. Supp. 3d 490, 497 (E.D. Va. 2016) (noting that the Fourth Amendment prohibits police from using excessive force during an arrest, investigatory stop, or other seizure of his person, and the Fourteenth Amendment prohibits police from using excessive force that amounts to punishment against a pretrial detainee) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

48. Yet, Plaintiff makes no other mention of this claim, whether it be in the heading of Count I or elsewhere. The Court therefore finds that Plaintiff has failed to state a claim for race-based discriminatory animus under the Fourteenth Amendment. Thus, to the extent Plaintiff intends to advance this claim, Defendants' Motions to Dismiss Count I are **GRANTED IN PART**.

Caesar moves to dismiss Plaintiff's claim for excessive force in violation of the Fourth Amendment because he argues Plaintiff fails to allege Caesar engaged in conduct which constitutes excessive force resulting in injury and fails to establish bystander liability. Caesar Mem. Supp. at 6. The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment reasonableness standard provides the basis to analyze "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." *Graham*, 490 U.S. at 395. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978); *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

Here, Plaintiff alleges Defendants "used deadly and excessive force when applying a choke hold to Plaintiff and intentionally causing his unconscious body to fall and his head to strike a concrete windowsill." Am. Compl. at ¶ 31. Although Tomlinson is alleged to have applied the chokehold, Plaintiff alleges that "Officer Caesar acted in concert and together with Officer Tomlinson through his affirmative actions of handcuffing, battering, and otherwise directly participating in constitutional violations." *Id.* at ¶ 58. Moreover, Plaintiff alleges that "Officer Caesar is liable as a bystander because he failed to act or intervene when Officer Tomlinson

17

exercised deadly force." *Id.* Plaintiff concludes that "Officer Caesar was on notice and had actual (and constructive) knowledge that a fellow officer was violating an individual's constitutional rights[,] had a reasonable opportunity to prevent the harm[,] and chose not to act." *Id.*

Caesar argues Plaintiff has failed to allege any injury as a result of being handcuffed and fails to state a claim for bystander liability. Caesar Mem. Supp. at 6-7. "As a general matter, a law officer may incur § 1983 liability only through affirmative misconduct." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 202 (4th Cir. 2002). An officer may be liable, however, when he has a duty to act but fails to do so. *Id.* at 203. "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Id.* "Therefore, an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204. "If the bystander lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible." *Id.* at n. 24. Caesar contests that he had the requisite knowledge and opportunity to act under this standard. Caesar Mem. Supp. at 7.

Plaintiff has alleged sufficient facts to meet the knowledge requirement in this case because, taking the facts alleged as true, both Defendants knew they did not have probable cause to arrest Plaintiff. *See* Am. Compl. at ¶ 11 ("The officers explicitly acknowledged that Plaintiff had done nothing wrong, and that they had no probable cause to arrest him when, among other statements, Officer Caesar" told Plaintiff to order an Uber and go home.). Plaintiff alleges he "stood calmly, with his hands visible to the officers and his thumbs in his pockets, throughout the duration of his interaction with the officers." *Id.* at ¶ 11. Defendants told Plaintiff to order an Uber and go home, to which Plaintiff replied, "I have the right to stand here." *Id.* "[I]mmediately after,"

Tomlinson "approached Plaintiff . . . from behind, grabbed him and placed him in a carotid chokehold." *Id.* at ¶ 12. Tomlinson also stopped his body camera from recording, which Plaintiff alleges was an intentional act to conceal evidence. *Id.*

But Plaintiff does not merely allege that Caesar was in "close physical proximity to Tomlinson during the arrest." Caesar Mem. Supp. at 7. Rather, he alleges that while Tomlinson applied the chokehold, Caesar grabbed Plaintiff's arms and handcuffed his wrists behind his back. Am. Compl. at ¶ 15. As he lost consciousness, Plaintiff alleges that both Defendants intentionally caused his body to fall forward, "apparently in an effort to take him to the ground and/or push him into the wall." *Id.* at ¶ 16. As a result, Plaintiff's head struck "the Colley Cantina exterior windowsill and/or building wall." *Id.* Plaintiff further alleges that both Defendants "then struck Plaintiff's head approximately 8-10 times while he was unconscious, perhaps in an attempt to revive Plaintiff." *Id.* Thereafter, Defendants took Plaintiff to the hospital to be "treated for severe physical injuries." *Id.* at ¶ 17. Finally, Plaintiff alleges that the Norfolk Police Department "adopted a policy banning chokeholds absent deadly force in 2014 or 2015 in response to other chokehold incidents." *Id.* at ¶ 20. The Court therefore finds that both Defendants knew they could only apply a chokehold in the face of a threat of deadly force. Since Plaintiff stood calmly throughout the entire interaction, Defendants did not face any such threat. Yet, Tomlinson applied a chokehold anyway and Caesar aided him by restraining Plaintiff in handcuffs, thereby preventing Plaintiff from resisting the chokehold.

Thus, the Court finds Plaintiff has alleged sufficient facts to demonstrate that Caesar is liable for his own affirmative conduct as well as a bystander. In light of the foregoing alleged facts and circumstances, the Court also finds that Plaintiff has pled a plausible claim that Defendants' exercised objectively unreasonable excessive force. *Graham*, 490 U.S. at 397.

Accordingly, Defendant Caesar's Motion to Dismiss Plaintiff's Fourth Amendment Excessive Force Claim in Count I of the Amended Complaint is **DENIED IN PART**.

## B. Count Three – Gross Negligence

Both Defendants move to dismiss Count III, in which Plaintiff alleges a state law claim of gross negligence. Am. Compl. at 16-17. Under Virginia law, there are three levels of negligence: simple negligence; gross negligence; and willful and wanton negligence. *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 486-87 (2004). Gross negligence "is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Id.* at 487; *see also Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987). "It is a heedless and palpable violation of legal duty respecting the rights of others." *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378 (1945). To prove gross negligence, a plaintiff must establish "a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Cowan*, 268 Va. at 487. "Several acts of negligence which separately may not amount to gross negligence, when combined may have a cumulative effect showing a form of reckless or total disregard for another's safety." *Chapman v. City of Virginia Beach*, 252 Va. 186, 190 (1996). "Deliberate conduct is 'important evidence of the question of gross negligence.'" *Id.* (quoting *Kennedy v. McElroy*, 195 Va. 1078, 1082 (1954)). "Because the standard for gross negligence in Virginia is one of indifference, not inadequacy, a claim for gross negligence must fail as a matter of law when evidence shows that defendants exercised some degree of care." *Elliot v. Carter*, 292 Va. 618, 623 (2016) (internal citations and quotations omitted).

Both Defendants move to dismiss Plaintiff's gross negligence claim. Tomlinson argues Plaintiff fails to state a claim because he does not "recite any allegations that show a lack of

care." Tomlinson Mem. Supp. at 7. Caesar argues he had probable cause[11] to arrest and therefore handcuff Plaintiff. Caesar Mem. Supp. at 8. Moreover, Caesar argues that he handcuffed Plaintiff "without injuring his hands or wrists while doing so." *Id.* After Plaintiff lost consciousness, Caesar "attempted to revive him" and "then took [P]laintiff to a hospital for treatment." *Id.* Accordingly, Defendants argue their conduct does not meet the standard for gross negligence.

Plaintiff alleges Defendants' acted grossly negligent "by handcuffing him, choking him to the point of unconsciousness and pushing his limp body to fall into the windowsill and/or building." Am. Compl. at ¶ 68. Thus, Plaintiff alleges the same set of facts previously described to support his excessive force and gross negligence claims. The Court finds Tomlinson's use of a chokehold in the absence of a threat of deadly force was grossly negligent, especially because he acted in contravention to Norfolk Police Department training and policy. To unnecessarily exert deadly force demonstrates indifference and complete neglect of the safety of another. *Cowan,* 268 Va. 487. Further, to assist in unnecessarily exerting deadly force by handcuffing Plaintiff's wrists behind his back demonstrates the same indifference and neglect. *Id.* Caesar's argument that the handcuffing itself did not injure Plaintiff's wrists is misleading and unavailing; the act of handcuffing Plaintiff while his fellow officer actively applied a chokehold is an act that demonstrates active participation in and contribution to the deadly force.

Moreover, Caesar's attempts to "revive" Plaintiff and take him to the hospital fare no better because Caesar only took these actions after acting grossly negligent. *See Elliot,* 292 Va. at 623 (holding the degree of care exercised *while* defendants supervised plaintiff precluded a gross negligence claim); *see also Kuykendall v. Young Life,* 261 F. App'x 480, 491 (4th Cir. 2008) (holding plaintiff could not prove gross negligence even though defendant "could, and perhaps

[11] The Court has already concluded Defendants did not have probable cause to arrest Plaintiff. Accordingly, the Court finds this argument without merit.

should, have done more to *prevent*" injury (emphasis added)). Corrective action, while better than nothing, does not demonstrate Defendants acted with a degree of care when that action only serves as an attempt to remedy past gross negligence. Considering all of the alleged facts and circumstances, the Court finds that Defendants' conduct would shock fair-minded persons. *Cowan*, 268 Va. at 487.

Accordingly, Defendants' Motions to Dismiss Count III of the Amended Complaint are **DENIED**.

### C. Count Four – False Arrest

Defendants both allege that Plaintiff's deferred disposition establishes probable cause for his arrest, thereby precluding his false arrest claim. Tomlinson Mem. Supp. at 7-8; Caesar Mem. Supp. at 8-9. As previously established in the discussion of Plaintiff's § 1983 claims under Count I, however, the Court will assume without deciding that Plaintiff's deferred disposition is not a final conviction under *Heck* and there was no probable cause for arrest.

Accordingly, Defendants' Motions to Dismiss Count IV of the Amended Complaint are **DENIED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **DENIED IN PART AND GRANTED IN PART**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
March 7 , 2022

Raymond A. Jackson
United States District Judge

22